UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| REX HATHAWAY and ) | |
| TAMMY HATHAWAY, ) | |
|     Plaintiffs ) | |
| ) | |
| v. ) | No. 1:10 CV 195 |
| ) | |
| CINTAS CORPORATE SERVICES, INC., ) | |
| CINTAS CORPORATION #2 d/b/a ) | |
| CINTAS CORPORATION, CINTAS FIRE ) | |
| PROTECTION AND CINTAS FIRST AID ) | |
| & SAFETY, THE LINCOLN ELECTRIC ) | |
| COMPANY, AIR GAS – MID AMERICA, ) | |
| INC., and AIR GAS – NORTH CENTRAL, ) | |
| INC., ) | |
| ) | |
|     Defendants. ) | |

## OPINION AND ORDER

Defendant Lincoln Electric Company has moved to dismiss Count V of plaintiffs Rex and Tammy Hathaway's complaint (DE # 95), and has also moved for summary judgment on Counts IV and VI of plaintiffs' complaint (DE # 102.) For the reasons outlined below, Lincoln's motion to dismiss is granted, and Lincoln's motion for summary judgment is denied.

## I. FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Rex Hathaway was employed as a welder/plasma torch operator at Quik Cut, Inc. ("Quik Cut"), a welding/plasma cutting company located in Allen County, IN. On February 12, 2009, Mr. Hathaway was operating a Pro Cut 80 plasma cutter, which was manufactured by defendant Lincoln Electric Company ("Lincoln"). The Pro Cut 80 plasma cutter ("the plasma cutter") is a machine that is used to cut through metal and steel. The plasma cutter emits sparks when used to cut metal.

While using the plasma cutter on February 12, Mr. Hathaway's shirt caught on fire, which resulted in Mr. Hathaway suffering serious burns to a substantial portion of his body. The fire was started when sparks from the plasma cutter contacted the shirt Mr. Hathaway was wearing at the time. The shirt Mr. Hathaway was wearing at the time of the accident was a 100% cotton shirt provided to Quik Cut by defendant Cintas Corporate Services #2 d/b/a Cintas Corporation ("Cintas").

Mr. Hathaway and his wife, Tammy Hathaway, brought suit against several defendants, including Lincoln. (DE # 1.) In their complaint, plaintiffs brought three Counts against Lincoln: negligence (Count IV), breach of warranty (Count V), and products liability (Count VI). (*Id.*) In 2010, Lincoln moved to dismiss Counts IV and V of plaintiffs' complaint. (DE # 23.) The court later issued an order dismissing Count IV in its entirety and Count V as it related to plaintiffs' implied warranty claims. (DE # 63.)

---

[1] The facts that follow are construed most favorably to plaintiffs, the non-moving party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998).

2

The court denied Lincoln's motion as it related to the express warranty claim in Count V. (*Id.*)

## II. LINCOLN'S MOTION TO DISMISS COUNT V

Lincoln has now moved to dismiss Count V of plaintiffs' complaint for failure to state a claim. (DE # 95.) Although Lincoln filed its answer to plaintiffs' complaint long before it filed this motion, the motion is still appropriately analyzed under FED. R. CIV. P. 12(b)(6). *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 757 n.1 (7th Cir. 2006).

### A. Legal Standard

Defendant has moved to dismiss plaintiffs' claims under RULE 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE for failure to state a claim upon which relief may be granted. RULE 8 of the FEDERAL RULES OF CIVIL PROCEDURE sets forth the pleading standard for complaints filed in federal court; specifically, that rule requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. "The RULE reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (internal quotation marks omitted). "While the federal pleading standard is quite forgiving . . . 'the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011) (quoting *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010)); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).

For purposes of deciding defendants' RULE 12(b)(6) motion, the court accepts plaintiffs' factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

**B. Analysis**

In its motion to dismiss, defendant Lincoln argues that Indiana requires privity for breach of warranty actions, and because plaintiffs cannot show that they were a party to the contract for the purchase of the plasma cutter or that plaintiffs were in privity with a party to the contract for the plasma cutter, plaintiffs' express warranty claims must be dismissed. (DE # 96 at 2.) Plaintiffs have not responded to this motion.

The court previously recognized this problem in its December 1, 2010 order analyzing plaintiffs' warranty claims. In that order, the court stated:

> The court notes that it is possible that this claim should be dismissed for a reason not addressed by either party. Under Indiana law, an express warranty is created when a seller presents an affirmation of fact, a promise, a sample, a model, or a description of goods to the buyer that is made part of the basis of the bargain between the seller and the buyer. IND. CODE § 26-1-2-313 (2010). Nothing in the complaint alleges that the Hathaways entered into any type of bargain or purchase agreement with Lincoln. In order to have a claim for breach of express warranty, the Hathaways will have to show that they were in privity of contract with the purchaser of the Plasma Cutter, Mr. Hathaway's employer, but none of the allegations in the complaint show that they will be able to do so. *See* IND. CODE § 26-1-2-318 (2010); *Davidson v. John Deere Co.*, 644 F. Supp. 707, 713 (N.D. Ind. 1986) (finding that there is no privity of contract under Indiana law between a buyer and his employees). However, since Lincoln has not raised this argument and the parties have not had an opportunity to brief this issue, the court will not dismiss the claim at this time.

(DE # 63 at 6 n.1.) Nothing has changed since the court issued this order in December of 2010. Plaintiffs have not filed an amended complaint, and thus, plaintiffs still have not alleged that they entered into any type of bargain or purchase agreement with Lincoln.

4

Additionally, plaintiffs have not shown they were in privity of contract with Mr. Hathaway's employer, Quik Cut. Because there is no privity of contract between a buyer and his employees, *Davidson*, 644 F. Supp. at 713, plaintiffs' express warranty claims will be dismissed.

The court previously dismissed plaintiffs' implied warranty claims in Count V. (DE # 63 at 6.) Count V is now dismissed in its entirety.

### III. LINCOLN'S MOTION FOR SUMMARY JUDGMENT ON COUNT VI

Lincoln has also moved for summary judgment on plaintiffs remaining claims in Count VI. (DE # 102.)[2]

**A. Legal Standard**

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

---

[2] Lincoln also seeks summary judgment on Count IV, but as noted above, that Count has already been dismissed.

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are

6

reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

**B. Analysis**

The parties agree that the Indiana Products Liability Act ("IPLA") governs plaintiffs' remaining claim, Count VI. (DE # 102 at 9; DE # 111 at 3.) The IPLA, Indiana Code sections 34–20–1–1 through 34–20–9–1, governs all actions brought by a user or consumer against a manufacturer or seller for physical harm caused by a product, regardless of the legal theory upon which the action is brought. *See* IND. CODE § 34–20–1–1.

To succeed in an action under the IPLA, a plaintiff must prove the following elements:

> (1) he or she was harmed by a product; (2) the product was sold "in a defective condition unreasonably dangerous to any user or consumer"; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold.

*Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006) (quoting IND. CODE § 34–20–2–1); *see also Moss v. Crosman Corp.*, 136 F.3d 1169, 1171 (7th Cir. 1998). "[A] plaintiff can satisfy the second element-that the product was defective-by showing one of the following: a design defect, a manufacturing defect, or a failure to warn." *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001); *see also Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997). The second element requires that a plaintiff show that the product was both in a defective condition and unreasonably dangerous.

*Bourne*, 452 F.3d at 635-36 (citing *Baker v. Heye-America,* 799 N.E.2d 1135, 1140 (Ind. Ct. App. 2003)); *see also Rodefer v. Hill's Pet Nutrition, Inc.*, No. IP 01-123-C H/K, 2003 WL 23096486, at *10 (S.D. Ind. Nov. 7, 2003) ("Though often merged into the question of whether a product is defective, the requirement that a product be 'unreasonably dangerous' is a separate element of a products liability claim . . . .").

In the present case, plaintiffs contend that the plasma cutter Mr. Hathaway was using when he got injured was defective because it suffered from a manufacturing defect, because it suffered from a design defect, and because the product lacked adequate warnings. (DE # 1 at 16-18). In its motion for summary judgment, Lincoln argues that it is entitled to summary judgment on plaintiffs' IPLA claims because the plasma cutter is not unreasonably dangerous. (*See* DE # 102 at 11, 14.)

For purposes of the IPLA, "unreasonably dangerous" refers to "any situation in which the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases the product with the ordinary knowledge about the product's characteristics common to the community of consumers." IND. CODE § 34-6-2-146; *see also Bourne*, 452 F.3d at 636. "[A] product can be 'dangerous,' as that term is commonly understood, without being 'unreasonably dangerous' for purposes of liability under the [IPLA]." *Meyers v. Furrow Bldg. Materials*, 659 N.E.2d 1147, 1149 (Ind. Ct. App. 1996). "'The requirement that the product be in a defective condition focuses on the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer.'" *Birch v. Midwest Garage Door Sys.*, 790 N.E.2d 504, 517 (Inc. Ct. App.

8

2003) (quoting *Smock Materials Handling Co., Inc. v. Kerr*, 719 N.E.2d 396, 402 (Ind. Ct. App. 1999)).

Under previous Indiana law, "manufacturers had . . . no obligation to protect against 'open and obvious' dangers in a negligence or 'defect' case." *Mesman v. Crane Pro Servs.*, 409 F.3d 846, 850 (7th Cir. 2005). "But when the Indiana legislature decided to codify the state's products liability law, it omitted the 'open and obvious' defense, replacing it with a defense (usually referred to as 'incurred risk') that requires proof that the user of the product was actually 'aware of the danger in the product.'" *Id.* (citing IND. CODE § 34-20-6-3). Thus, the open and obvious rule is no longer a complete bar to recovery in Indiana. *Bourne*, 452 F.3d at 635.

Although Lincoln raised the incurred risk defense as an affirmative defense, it does not rely on that argument in its motion for summary judgment. Instead, Lincoln argues that it is entitled to summary judgment because the plasma cutter was not unreasonably dangerous. (*See* DE # 102 at 14.) Lincoln argues that the product was not unreasonably dangerous because the risk of fire associated with the plasma cutter was open and obvious. (*Id.* at 11.) As plaintiffs point out, the fact that a risk was open and obvious is not conclusive evidence that a product is not unreasonably dangerous. *Mesman*, 409 F.3d at 850-51. Obviousness is, however, "a relevant inquiry because . . . the question of what is unreasonably dangerous depends upon the reasonable expectations of consumers and expected uses." *Bourne*, 452 F.3d at 637. The Seventh Circuit has stated:

9

> In some cases, the obviousness of the risk will obviate the need for any further protective measures, or obviousness may prove that an injured user knew about a risk but nonetheless chose to incur it. Although obviousness typically factors in the equation for the jury (it is evidence but "not conclusive evidence," *Mesman,* 409 F.3d at 851), there are some cases where the case is so one-sided that there is no possibility of the plaintiff's recovery. *See Moss,* 136 F.3d at 1173-76.

*Id.* (some citations omitted).

"The question whether a product is unreasonably dangerous is usually a question of fact that must be resolved by the jury." *Heye-America*, 799 N.E.2d at 1140. That question, however, may be decided as a matter of law under certain circumstances, "especially if the alleged danger is open and obvious, as with the risk that a lighter will start fires, the risk that a running lawnmower blade will injure a hand stuck underneath the mower, and the risk that a BB gun will injure." *Bourne v. Marty Gilman, Inc.*, No. 1:03–CV–1375, 2005 WL 1703201, at *6 (S.D. Ind. July 20, 2005), *aff'd* 452 F.3d at 638-39.

In support of its argument that the plasma cutter was not unreasonably dangerous, Lincoln directs the court to evidence that plaintiff Rex Hathaway, along with Mr. Hathaway's coworkers that had used the plasma cutter, knew that they had to protect themselves from the sparks emitted from the plasma cutter to prevent fires and burns. (DE # 102 at 3-7.) Lincoln argues that "the hazards cannot be said to go beyond that contemplated by the ordinary consumer who purchased or used the Pro Cut 80 with the ordinary knowledge about the Pro Cut's characteristics . . . " (*Id.* at 12.) Thus, Lincoln likens the facts of this case to several cases holding that products were not unreasonably dangerous as a matter of law because of the obvious danger involved in the use of the products. *See, e.g., Bourne*, 452 F.3d at 637 (finding that goal post that caused injury after

10

being torn down at football game not unreasonably dangerous as a matter of law); *Moss*, 136 F.3d at 1174-75 (BB gun not unreasonably dangerous as a matter of law); *Welch v. Scripto-Tokai Corp.*, 651 N.E.2d 810, 814-15 (Ind. Ct. App. 1995) (concluding that a lighter is not unreasonably dangerous and noting that "[t]he ordinary consumer of a lighter is an adult and the ordinary adult consumer contemplates the risks posed by a lighter, including the dangers associated with children who play with lighters.").

In response, plaintiffs argue that the plasma cutter is unreasonably dangerous as the risk of fire associated with the plasma cutter is not obvious. (DE # 111.) Specifically, plaintiffs argue that because Mr. Hathaway (DE # 112-1 at 3), and his coworkers (DE # 112-4 at 3; DE # 112-3 at 5), were able to safely use the plasma cutter by wearing 100% cotton shirts, the risk of fire was not open and obvious. (DE # 111 at 4-5.)

In *Corbin v. Coleco Industries, Inc.*, a Seventh Circuit case applying Indiana law, the plaintiff was injured after diving head first into a four foot above-ground swimming pool. 748 F.2d 411, 412-13 (7th Cir. 1984). The plaintiff hit his head on the bottom of the pool, and was paralyzed from the injury. *Id.* at 413. The plaintiff sued the manufacturer of the pool, and the manufacturer claimed that it could not be held liable on plaintiff's failure to warn claim because the danger of diving into four feet of water was open and obvious. *Id.* at 417. The district court ruled for the defendant on that issue, but the Seventh Circuit reversed, stating:

> Whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is

11

not open and obvious.

*Id.* at 417-18. In ruling that summary judgment was not appropriate on the open and obvious issue, the court noted that if people generally believe that they can safely dive into shallow water by executing a flat, shallow dive, "then it cannot be said, as a matter of law, that the risk of . . . injury from diving into shallow water is open and obvious." *Id.*

The Indiana Court of Appeals has subsequently adopted the reasoning of *Corbin*. For example, in *Cole v. Lantis Corp.*, the plaintiff, an employee who helped load cargo onto aircrafts, was injured using a loader he was required to use in performing his job. 714 N.E.2d 194, 197 (Ind. Ct. App. 1999). There was a gap of approximately eighteen inches between the edge of the loader and the airplanes that plaintiff would load the cargo onto. *Id.* The plaintiff brought suit against the manufacturer of the loader after he slipped and fell through the gap between the loader and an airplane and suffered serious injuries. *Id.* The manufacturer argued that the loader was not unreasonably dangerous because plaintiff was aware of the risk of falling, and thus the danger was open and obvious. *Id.* at 198.[1]

The trial court ruled that the plaintiff's claim was barred by the open and obvious rule.[2] The Indiana Court of Appeals reversed, citing to an Indiana case which cited *Corbin*, and noted that the plaintiff had been moving cargo over the gap for over a year before he fell, and that he had apparently developed a generally safe method of moving cargo

---

[1] The *Mesman* court questioned whether the Indiana Supreme Court would follow the *Cole* opinion. *Mesman*, 409 F.3d at 851. That decision, however, did not question the portion of *Cole* the court relies on in this opinion.

[2] As noted above, that rule used to be a complete bar to recovery in Indiana.

without falling. *Id.* at 199. The court concluded that the question of whether the loader was unreasonably dangerous was a question of fact for a jury to decide. *Id.* at 200.³

Plaintiffs cite to this line of cases and argue that Mr. Hathaway and other Quik Cut employees had developed a method of using the plasma cutter safely by wearing 100% cotton shirts and following good work practices. (DE # 111 at 4-6; DE # 112-3 at 5; DE # 112-4 at 3-4) Additionally, plaintiffs point to the fact that Mr. Hathaway had used the plasma cutter without incident over fifty times prior to the accident that gave rise to this lawsuit. (DE # 112-1 at 3.) Defendant Lincoln does not respond to this argument in its reply brief.

---

³ The *Cole* court summarized other Indiana and Seventh Circuit cases that reached similar conclusions:

> [*Schooley v. Ingersoll Rand, Inc.,* 631 N.E.2d 932, 939 (Ind. Ct. App. 1994)] (although the danger of moving a large steel plate without safety chains was obvious, whether the rule would apply to bar plaintiff's recovery was a question of fact for the jury where moving the plate was part of employee's job and the plate had been moved safely on many other occasions); [*FMC Corp. v. Brown,* 526 N.E.2d 719, 725 (Ind. Ct. App. 1988)] (even though the danger of electrocution posed by a power line was obvious to the operators of a crane, whether the open and obvious rule would apply to preclude recovery was a factual question for the jury where the operators often performed repairs near power lines and could have reasonably believed that it was safe to do so); [*McDonald v. Sandvik Process Systems, Inc.,* 870 F.2d 389, 394 (7th Cir. 1989)] (although the danger posed by a moving slicing blade was obvious, whether the open and obvious rule would apply to bar recovery was a question of fact where employees had developed a generally safe method of tightening the blade while the machine was running)[.]

*Cole,* 714 N.E.2d at 199.

Mr. Hathaway used this plasma cutter over fifty times before the date in question without his shirt ever going up in flames, like it did on February 19. Additionally, several of Mr. Hathaway's coworkers testified that the way in which plaintiff was operating the plasma cutter is considered to be safe. Lincoln has presented no evidence showing that similar accidents occurred at Quik Cut, or anywhere else. *Cf. Hughes v. Battenfeld Glouchester Eng'g Co.*, No. TH-01-0237, 2003 WL 22247195, at *4 (S.D. Ind. Aug. 20, 2003) ("The evidence presented in this case is easily contrasted with that in *Cole* . . . . Though [plaintiff] had used the Secondary Treater Nip Station for several years without incident, there is evidence that other . . workers were not so fortunate. There had been three other 'lost time injuries' on the exact same line."). The deposition testimony Lincoln included in its motion for summary judgment indicates the opposite is true. (DE # 102-7 at 2.) Additionally, there was evidence presented that cotton clothing is the industry standard for welding and plasma cutting (DE # 102-2 at 5), which indicates that people in the industry generally believe that cotton clothing protects plasma cutters from the risk of fire. *Corbin*, 748 F.2d at 417-18.

Based on this evidence, a reasonable jury could conclude that the plasma cutter was unreasonably dangerous. Thus, a question of fact remains as to whether the plasma cutter was unreasonably dangerous, and defendant Lincoln has not met its initial burden on summary judgment. Because Lincoln's only argument in its motion for summary judgment is that the plasma cutter was not unreasonably dangerous,[4] Lincoln's motion for summary

---

[4] Lincoln may also be attempting to argue that products with inherent dangers, which Lincoln contends the plasma cutter has, need not have warnings regarding those dangers. (DE # 102 at 12.) Lincoln cites no case law in support of this argument. The

14

judgment is **DENIED** (DE # 102.) Lincoln's motion for oral argument is **DENIED AS MOOT.** (DE # 114.)

IV. CONCLUSION

For the foregoing reasons:

1. Defendant Lincoln Electric's motion to dismiss Count V of plaintiffs' complaint is **GRANTED.** (DE # 95.)

2. Defendant Lincoln Electric's motion for summary judgment on Count VI of plaintiffs' complaint is **DENIED**. (DE # 102.)

3. Defendant Lincoln Electric's motion for oral argument is **DENIED AS MOOT**. (DE # 114.)

**SO ORDERED.**

Date: September 26, 2012

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

court "is not required to scour the party's various submissions to piece together appropriate arguments[,]" *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995), and it will not do so here.