UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| REX HATHAWAY and | ) | |
| TAMMY HATHAWAY, | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | No. 1:10 CV 195 |
| | ) | |
| CINTAS CORPORATE SERVICES, INC., | ) | |
| CINTAS CORPORATION #2 d/b/a | ) | |
| CINTAS CORPORATION, CINTAS FIRE | ) | |
| PROTECTION AND CINTAS FIRST AID | ) | |
| & SAFETY, THE LINCOLN ELECTRIC | ) | |
| COMPANY, AIR GAS – MID AMERICA, | ) | |
| INC., and AIR GAS – NORTH CENTRAL, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Defendant Cintas Corporate Services #2 d/b/a Cintas Corporation ("Cintas")

has moved for summary judgment on Counts I, II, and III of plaintiffs' complaint.

(DE # 105.) For the following reasons, that motion is granted in part and denied in part.

### I. Facts and Procedural History[1]

Plaintiff Rex Hathaway was employed as a welder/plasma torch operator at

Quik Cut, Inc. ("Quik Cut"), a welding/plasma cutting company located in Allen

County, IN. On February 12, 2009, Mr. Hathaway was operating a Pro Cut 80 plasma

cutter, which was manufactured by defendant Lincoln Electric Company ("Lincoln").

_____

[1] The facts that follow are construed most favorably to plaintiffs, the non-moving party.
*Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998).

The Pro Cut 80 plasma cutter ("the plasma cutter") is a machine that is used to cut through metal and steel. The plasma cutter emits sparks when used to cut metal.

While using the plasma cutter on February 12, Mr. Hathaway's shirt caught on fire, which resulted in Mr. Hathaway suffering serious burns to a substantial portion of his body. The fire was started when sparks from the plasma cutter contacted the shirt Mr. Hathaway was wearing at the time. The shirt Mr. Hathaway was wearing at the time of the accident was a 100% cotton shirt ("the shirt") provided to Quik Cut by defendant Cintas Corporate Services #2 d/b/a Cintas Corporation ("Cintas").

The relationship between Quik Cut and Cintas was governed by a uniform rental agreement. (DE # 105-1 at 3.) Under that agreement, Cintas provided Quik Cut employees with work clothes, and also provided laundering and repair services for those clothes. (*Id.*)

Mr. Hathaway and his wife, Tammy Hathaway, brought suit against several defendants, including Cintas. (DE # 1.) In their complaint, plaintiffs brought three Counts against Cintas: negligence (Count I), breach of warranty (Count II), and products liability (Count III). (*Id.*) Plaintiffs also brought a loss of consortium claim against all defendants (Count VIII). (*Id.*) Cintas has now moved for summary judgment on Counts I, II, and III.

## II. Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations,

weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

### III. Count II: Breach of Warranties

Cintas begins its brief in support of its motion for summary judgment by arguing that Count II of plaintiffs' complaint is superseded by plaintiffs' product liability claims, and therefore Count II should be dismissed as duplicative. (DE # 106 at 7.) Plaintiffs do not respond to this argument.

"When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). It is also proper for a federal court to defer to state appellate courts, unless there is a "persuasive indication[ ] that the state supreme court would decide the issue differently." *Id.* (quoting *Allstate Ins. Co. v. Tozer,* 392 F.3d 950, 952 (7th Cir. 2004)).

The Indiana Supreme Court discussed, but ultimately did not decide, this issue in *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009). It did, however, make note

4

that the Indiana Court of Appeals and several federal district courts sitting in Indiana have all held that "tort-based breach-of-warranty claims have been subsumed into the PLA." *See Cincinnati Ins. Cos. v. Hamilton Beach/Proctor–Silex, Inc.,* No. 4:05 CV 49, 2006 WL 299064, at *3 (N.D. Ind. Feb. 7, 2006); *N.H. Ins. Co. v. Farmer Boy AG, Inc.,* No. IP 98–0031–C–T/G, 2000 WL 33125128, at *3 (S.D. Ind. Dec. 19, 2000); *Condon v. Carl J. Reinke & Sons, Inc.,* 575 N.E.2d 17, 18 (Ind. Ct. App. 1991).

Plaintiffs' breach of implied and express warranty claims are based in tort because plaintiffs have not sought recovery for damage to the shirt or any economic loss arising from the failure of the shirt to work as expected. *Gunkel v. Renovations, Inc.,* 822 N.E.2d 150, 153 (Ind. 2005) ("Indiana law under the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.").

The court agrees with the cases cited above, and concludes that plaintiffs' breach of implied warranty claims have been subsumed by their IPLA claim. *See Henderson v. Freightliner, LLC,* No. 1:02-CV-01301DFH, 2005 WL 775929, at *3 (S.D. Ind. Mar. 24 2005) ("The IPLA effectively supplants both the common law negligence claims and the

breach of implied warranty claims.")[2] Additionally, the court agrees that plaintiffs' express warranties are also merged into their IPLA claim. *See Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1024-27 (N.D. Ind. 2011). Therefore, Cintas's motion for summary judgment as to Count II of plaintiffs' complaint is granted.

### IV. Count III: Products Liability

The Indiana Products Liability Act ("IPLA"), Indiana Code sections 34–20–1–1 through 34–20–9–1, governs all actions brought by a user or consumer against a manufacturer or seller for physical harm caused by a product, regardless of the legal theory upon which the action is brought. *See* IND. CODE § 34–20–1–1.

To succeed in an action under the IPLA, a plaintiff must prove the following elements:

> (1) he or she was harmed by a product; (2) the product was sold "in a defective condition unreasonably dangerous to any user or consumer"; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold.

*Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006) (quoting IND. CODE § 34–20–2–1); *see also Moss v. Crosman Corp.*, 136 F.3d 1169, 1171 (7th Cir. 1998). "[A] plaintiff can satisfy the second element-that the product was defective-by showing one of the following: a design defect, a manufacturing defect, or a failure to warn." *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001); *see also Natural Gas Odorizing, Inc. v. Downs,*

---

[2] Although plaintiffs did not respond to Cintas's argument regarding the IPLA subsuming tort breach of implied warranty claims, they have agreed with that conclusion in a different brief in this case. (*See* DE # 53 at 2-3.)

6

685 N.E.2d 155, 161 (Ind. Ct. App. 1997). In this case, plaintiffs allege that the shirt was defective under all three theories. (DE # 1.)

Defendant Cintas has moved for summary judgment on plaintiffs' product liability claims. (DE # 106 at 14.) The court will address all three possible theories of defect in turn.

### A. Manufacturing Defect

Plaintiffs allege that Cintas is liable under the IPLA due to a manufacturing defect in the shirt. (DE # 1 at 9.) Cintas argues that plaintiffs have provided no evidence that the shirt had a manufacturing defect. (DE # 106 at 17.)

"A product contains a manufacturing defect when it deviates from its intended design." *Westchester Fire Ins. Co. v. Am. Wood Fibers, Inc.*, No. 2:03–CV–178–TS, 2006 WL 3147710, at *5 (N.D. Ind. Oct. 31, 2006); *see also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 (1998) (a product contains a manufacturing defect "when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product[.]"); Joseph R. Alberts, Robert B. Thornburg & Hilary G. Buttrick, *Survey of Recent Developments in Indiana Product Liability Law*, 45 Ind. L. Rev.1279, 1285 (2012) (the manufacturing defect theory under Indiana law applies in situations where "the product has a defect that is the result of a problem in the manufacturing process.").

In this case, plaintiffs argue that the shirt suffered from a manufacturing defect because Cintas intended to design a "heavy shirt" and the shirt that Mr. Hathaway was

wearing on the day of the accident was not a "heavy shirt." (DE # 115 at 13.)
Additionally, plaintiffs argue that the shirt suffered from a manufacturing defect
because there were alternative designs available. (*Id.*)

As to the first theory, Cintas argues that plaintiffs have produced no evidence
that the shirt varied in any way from the 100% cotton shirt it intended to produce.
(DE # 106 at 18.) Thus, defendants have met their initial burden on summary judgment.
In response, plaintiffs argue that Cintas intended to make a 100% cotton shirt that was a
heavy shirt, and according to Dr. Walter Thomas, one of plaintiffs' experts, the shirt at
issue in this case was not a "heavy shirt." (DE # 115 at 13.) Plaintiffs, however, cite no
evidence that Cintas intended to make the shirt at issue a "heavy shirt," and thus, have
provided no evidence that the shirt deviated from its intended design. Therefore,
plaintiffs have not produced any evidence upon which a reasonable jury could find for
them, *Carmichael,* 605 F.3d at 460, and Cintas is entitled to summary judgment on
plaintiffs' heavy shirt theory.

Plaintiffs also argue that the existence of alternative designs provide evidence of
a manufacturing defect. Plaintiffs do not cite any precedent indicating that an
alternative design can provide the basis for a manufacturing defect claim, and the only
case the court could find on this issue indicates the opposite is true. *See Westchester Fire
Ins. Co.,* 2006 WL 3147710, at *5. Therefore, the court will address plaintiffs' alternative
design theories in the design defect section of this opinion, and Cintas is entitled to
summary judgment on plaintiffs' manufacturing defect claim. *See id.* ("The Court

dismissed the Plaintiff's claim for a manufacturing defect because no evidence was submitted suggesting the [product] alleged to have caused the . . . fire deviated from the intended design or differed in any way from the [product] normally manufactured by the Defendant.").

### B. Design Defect

Plaintiffs also allege that the shirt was defectively designed. (DE # 1 at 11, 12.) Cintas makes several arguments why it is entitled to summary judgment on plaintiffs' design defect claim. Each argument will be addressed in turn.

In *TRW Vehicle Safety Systems, Inc. v. Moore*, the Indiana Supreme Court discussed the appropriate standard for a design defect claim under the IPLA:

> [I]n product liability claims alleging a product design defect, the Indiana Product Liability Act substitutes a negligence standard for strict liability and prescribes the applicable standard of care. Ind. Code § 34–20–2–2. To recover damages, a plaintiff asserting a claim of defective product design "must establish that the manufacturer or seller failed to exercise reasonable care under the circumstances in designing the product." *Id.*

936 N.E.2d 201, 214 (Ind. 2010). "To prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007).

"Manufacturers have a duty to design products that are free of flaws which cause injury in the product's use." *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1206 (7th Cir. 1995). Cintas makes an argument about the duty it owed to plaintiffs (DE # 116 at 18), but the court does not need to reach that issue, as plaintiffs' design defect claim fails for

9

another reason. "'Indiana requires the plaintiff to show that another design not only could have prevented the injury but also was cost-effective under general negligence principles.'" *Id.* (quoting *Pries v. Honda Motor Co.,* 31 F.3d 543, 546 (7th Cir. 1994)). In its response brief, plaintiffs argue that there are three ways in which the shirt was defective, (DE # 115 at 5-6)[3] but only offer one theory on why the design of the shirt was defective: the shirt should have been treated with a flame retardant substance.

As Cintas points out in its brief, the Seventh Circuit, and other courts, have granted summary judgment against plaintiffs that have failed to demonstrate the cost effectiveness of alternative designs. In this case, although plaintiffs have submitted testimony indicating that the shirt would not have caught on fire if it had been treated with some sort of flame retardant (DE # 116-4 at 6), plaintiffs have submitted no evidence indicating the cost effectiveness of treating 100% cotton shirts with a flame retardant substance. This failure entitles Cintas to summary judgment on plaintiffs' design defect claim. *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 815 (7th Cir. 2012); *Whitted,* 58 F.3d at 1206; *see also Tungate v. Bridgestone Corp.,* No. IP 02–0151, 2004 WL 771191, at *6

---

[3] The other two arguments as to why the shirt was defective are not persuasive. First, plaintiffs argue "Cintas should not have used 100% cotton for welder and plasma cutter work shirts." (DE # 115 at 5-6.) This argument has nothing to do with the design of the shirt, and is not persuasive.

    Second, plaintiffs' argue that the shirt was defectively designed because "the 100% cotton work shirts should have included a warning as to the flammability characteristics of 100% cotton." *Id.* at 6. Plaintiffs also bring a failure to warn claim, which will be addressed later. A plaintiff does not have to show a design defect to prove a failure to warn claim. *Ritchie,* 242 F.3d at 724. Therefore, the court will address the shirt's lack of warnings in the failure to warn section of the opinion.

(S.D. Ind. Mar. 26, 2004); *Rodefer v. Hill's Pet Nutrition, Inc.*, No. IP 01-123-C H/K, 2003 WL 23096486, at *9 (S.D. Ind. Nov. 7, 2003).

### C. Failure to Warn

Finally, plaintiffs argue that the shirt was defective because the shirt did not have a warning "regarding the potential for injury related to using 100% cotton clothing while performing welding or plasma cutting." (DE # 115 at 10.) Cintas argues that it is entitled to summary judgment because it relied on Quik Cut to warn Mr. Hathaway of the dangers associated with its product and Mr. Hathaway's work environment. (DE # 106 at 22.) For the reasons outlined below, Cintas is entitled to summary judgment on plaintiffs' failure to warn theory.

Under Indiana law, the duty to warn is twofold: "(1) to provide adequate instructions for safe use and (2) to provide a warning as to dangers inherent in improper use." *Rushford*, 868 N.E.2d at 810. Although "warnings generally must be given to the ultimate user or consumer . . . courts have articulated several exceptions which permit delegation of the duty to warn or which limit the general obligation of a distributor to supply warnings to the ultimate user or consumer." *Natural Gas Odorizing, Inc.*, 685 N.E.2d at 163. One such exception is the sophisticated intermediary doctrine. Under this exception, a manufacturer has no duty to warn the ultimate user when it sells the product to a knowledgeable or sophisticated intermediary. *Id.*

The sophisticated intermediary doctrine is applicable if: "(1) the product is sold to an intermediary with knowledge or sophistication equal to that of the manufacturer; (2) the manufacturer adequately warns this intermediary; and (3) the manufacturer can

11

reasonably rely on the intermediary to warn the ultimate consumer." *First Nat. Bank and Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 691 (7th Cir. 2004); *see also Natural Gas Odorizing, Inc.*, 685 N.E.2d at 163. Courts analyzing the sophisticated intermediary doctrine also look to other factors, including:

> [T]he likelihood or unlikelihood that harm will occur if the intermediary does not pass on the warning to the ultimate user, the [ ] nature of the probable harm, the probability or improbability that the particular intermediary will not pass on the warning[,] and the ease or burden of the giving of the warning by the manufacturer to the ultimate user. *Ritchie,* 242 F.3d at 724 (quotation omitted).

*Id.* at 691-92; *see also Natural Gas Odorizing, Inc.*, 685 N.E.2d at 163.

"Whether a manufacturer has discharged its duty under the sophisticated intermediary doctrine is almost always a question for the trier of fact." *Downs*, 685 N.E.2d at 164; *see also Conley v. Lift-All Co., Inc.*, No. 1:03-CV-1200, 2005 WL 1799505, at *11 (S.D. Ind. July 25, 2005.) Courts have, however, concluded that the sophisticated intermediary doctrine applies as a matter of law. *Am. Eurocopter Corp.*, 378 F.3d at 691-93; *Taylor v. Monsanto Co.*, 150 F.3d 806, 808-09 (7th Cir. 1998).

In this case, Cintas argues that it discharged its duty under the sophisticated intermediary doctrine. (DE # 106 at 22-23.) Cintas directs the court to the Standard Uniform Rental Service Agreement ("the rental agreement") between Cintas and Quik Cut. That document, which was signed sometime in 2004,[4] states in part:

> Unless specified otherwise, the garments supplied under this agreement are not flame retardant or acid resistant and contain no special flame retardant or acid resistant features. Flame retardant and acid resistant garments are

---

[4] There are two different dates on the document. Although it is not clear the exact date the document was signed, both dates are from 2004. (DE # 105-1.)

available from Company upon request. Customer agrees to notify its employees that their garments are not designed for use in areas of flammability risk or where contact with hazardous materials is possible. Customer warrants that none of the employees for whom garments are supplied under this agreement required flame retardant or acid resistant clothing.

(DE # 105-1 at 3.)

Cintas argues that this agreement shows three things: (1) Quik Cut agreed to warn its employees that the clothing was not to be used in areas with a flammability risk; (2) Quik Cut affirmed that its employees did not need flame retardant clothing; and (3) Quik Cut knew that the clothing was not flame retardant. (DE # 106 at 13.) Additionally, Cintas argues that Quik Cut was in a better position to know how the clothing was going to be used, and thus was in a better position to ensure that employees wore any additional necessary personal protective equipment. (*Id.*)

Plaintiffs argue that the sophisticated intermediary doctrine is not applicable in this case. (DE # 115 at 11-13.) Plaintiffs argue that between Quik Cut and Cintas, Cintas had the greater level of sophistication about the uniforms. (*Id.* at 12.) Plaintiffs also argue that Cintas was in a position to recognize the need for flame retardant gear at Quik Cut and should not have sold 100% cotton shirts to a company that employed welders and plasma cutters. (*Id.*) Additionally, plaintiffs point out that none of the employees at Quik Cut knew that 100% cotton shirts could ignite. (*Id.*) Finally, plaintiffs argue that the rental agreement did not specifically warn that 100% cotton shirts could ignite when contacted by sparks. (*Id.*)

Although, as noted above, the question of whether a manufacturer has discharged its duty to warn under the sophisticated intermediary doctrine is usually a question of fact, this is a case that justifies application of that rule as a matter of law.

The first element of the sophisticated intermediary doctrine requires that the intermediary have "knowledge or sophistication equal to that of the manufacturer." *Am. Eurocopter Corp.*, 378 F.3d at 691. It is undisputed that in the rental agreement, Cintas informed Quik Cut that the clothing Quik Cut was renting was not flame retardant, and was not to be used in areas with a risk of flammability. (DE # 105-1 at 3.) Therefore, at the point when the rental agreement was executed, Quik Cut and Cintas had the same level of sophistication regarding the shirt's risk of fire: the shirt was not flame retardant, and thus, could catch on fire, and any employee wearing the shirt should not be in any area where there is a risk of fire. *Compare Natural Gas Odorizing, Inc.*, 685 N.E.2d at 163 (refusing to apply sophisticated intermediary doctrine as a matter of law where manufacturer failed to give specific warning about risk that caused injuries that prompted suit), *with Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198, 1210-12 (Ind. Ct. App. 1998) (holding that supplier had no duty to warn distributor when distributor already had adequate knowledge of product's risks), *questioned on other grounds by City of Gary v. Smith & Wesson Corp.*, 776 N.E.2d 368, 385 n.13 (Ind. Ct. App. 2002). Thus, the first element of the sophisticated intermediary doctrine was met in this case.

The second element of the sophisticated intermediary doctrine, that "the manufacturer adequately warns this intermediary[,]" has also been met in this case. *Am.*

14

*Eurocopter Corp.*, 378 F.3d at 691. In the rental agreement, Cintas stated that unless otherwise specified, the clothing provided was not flame retardant and had no flame retardant features. (DE # 105-1 at 3.) Additionally, Quik Cut agreed to notify its employees that the clothing "not designed for use in areas of flammability risk." (*Id.*) This language adequately warned Quik Cut that the shirt could catch fire.[5]

Finally, the last element of the sophisticated intermediary doctrine requires that "the manufacturer can reasonably rely on the intermediary to warn the ultimate consumer."*Am. Eurocopter Corp.*, 378 F.3d at 691. This element has also been met. It was very reasonable for Cintas to rely on Quik Cut to warn Quik Cut employees because Quik Cut agreed to do precisely that in the rental agreement. (DE # 105-1 at 3 ("Customer agrees to notify its employees that their garments are not designed for use in areas of flammability risk . . . .").)

Although some of the other factors noted above weigh in favor of plaintiffs' argument that the sophisticated intermediary doctrine does not apply, all three primary elements have been met in this case. Cintas warned Quik Cut that the shirts Cintas was providing were not flame retardant and should not be used in areas with a flammability risk. Additionally, Quik Cut agreed both that none of its employees needed flame retardant clothing and that it would warn its employees that the non-flame retardant

---

[5] Plaintiffs also appear to argue that because the rental agreement did not warn that 100% cotton shirts will ignite when contacted by sparks, Quik Cut was not adequately warned. (*See* DE # 115 at 13.) This argument is not persuasive. The rental agreement warned that the clothing provided by Cintas was not flame retardant and did not have any flame retardant features. This language adequately warned Quik Cut that the shirt could catch on fire.

clothing could not be warn in areas that have a flammability risk. "Delegation of the duty to warn makes particular sense[,]" as in this case, "where the manufacturer cannot control how the intermediary will use the product . . . ." *Monsanto Co.*, 150 F.3d at 808. No reasonable jury could conclude that Cintas failed to discharge its duty to warn by relying on Quik Cut, a "sophisticated intermediary." Cintas is therefore entitled to summary judgment on plaintiffs' failure to warn products liability claim.

### V. Count I: Negligence

Plaintiffs argue that even if their products liability claims should be dismissed, their case should move forward because the IPLA does not govern their negligence claim, as that claim is not subsumed by the IPLA because the relationship between Cintas and Quik Cut was primarily a service relationship, with goods only incidentally involved. (DE # 115 at 21.) Plaintiffs make no argument that the IPLA does not subsume negligence actions, and thus seem to concede that if the Cintas-Quik Cut relationship primarily involved a product, and not a service, Cintas is entitled to summary judgment. *See Henderson v. Freightliner, LLC*, No. 1:02-cv-1301, 2005 WL 775929, at *3 (S.D. Ind. Mar. 24, 2005); *see also Ryan ex rel. Estate of Ryan v. Philip Morris USA, Inc.*, No. 1:05 CV 162, 2006 WL 449207, at *2-3 (N.D. Ind. Feb. 22, 2006). Thus, the court will confine its analysis to determining whether this relationship was primarily about providing a product or a service.

"The IPLA does not apply to transactions that involve wholly or predominantly the sale of a service rather than a product." *Baker v. Heye-America*, 799 N.E.2d 1135, 1140 (Ind. Ct. App. 2003); *see also* IND. CODE § 34-6-2-114. "Trying to tell the difference

16

between a product and a service may not be harder than deciding if a glass is half full or half empty, or if a tomato is better characterized as a fruit than as a vegetable, but it is certainly not easy." *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 664 (7th Cir. 1998).

The Indiana Supreme Court considers several factors when determining whether a transaction is predominately for a product or for services:

> 1) the language of the contract; 2) the circumstances of the parties and the primary reason they entered into the contract; 3) the final product the purchaser bargained to receive, and whether it may be described as a good or a service; and 4) the costs involved, and whether the purchaser was charged only for goods or a price based on both goods and services.

*Pentony v. Valparaiso Dep't of Parks and Recreation*, No. 2:09–CV–363, 2012 WL 1085586, at * 3 (N.D. Ind. Mar. 29, 2012) (citing *Insul–Mark Midwest Inc. v. Modern Materials Inc.*, 612 N.E.2d 550, 555 (Ind. 1993)); *see also Dow Chem. Co. v. Ebling*, 723 N.E.2d 881, 904-05 (Ind. Ct. App. 2000), *aff'd in relevant part*, 753 N.E.2d 633 (Ind. 2001).

The parties do not cite, and the court could not find, any Indiana case that analyzed whether a company that provided clothes, including repair and laundering services for those clothes, is predominantly providing a product or a service. Plaintiffs cite to one case, *Hill v. Rieth-Riley Const. Co.*, in support of their position. 670 N.E.2d 940 (Ind. Ct. App. 1996), *abrogated on other grounds by Peters v. Forster*, 804 N.E.2d 736, 742-43. (Ind. 2004).

 In *Hill*, one of the plaintiffs was injured after the car she was driving veered off the road, hit the guardrail, and flipped over onto its side. *Id.* at 942. The plaintiffs, the injured driver and her husband, sued the defendants, an independent contractor and a sub-contractor that had been hired by the state to resurface a section of roadway and

17

the roadway's shoulder. The project required the defendants to remove and reset portions of the guardrail. *Id.* The plaintiffs sued defendants under the IPLA. *Id.* at 943. The defendants argued that they were not liable under the IPLA because they were service providers, and had not provided any product that would fall under the IPLA. *Id.* Specifically, defendants argued that removing and resetting guardrail was a service, and not a product. *Id.* Plaintiffs argued that the installation of new concrete plugs and the possible replacement of rusted rails created a factual issue of whether the defendants were sellers of a product. *Id.* The Indiana Court of Appeals disagreed, noting that "[t]he incidental installation of the new concrete plugs and rails does not change the predominate thrust of this contract from the provision of a service into a product contract." *Id.*

*Great Northern Ins. Co. v. Buddy Greg Motor Homes, Inc.*, a case from the Southern District of Indiana, is also instructive on this issue. No. IP 00–1378–C–H/K, 2002 WL 826386, at *1 (S.D. Ind. April 29, 2002.) In that case, the insurer of a used motor coach that caught fire sued the company that sold the motor coach to the insured. *Id.* at *1-2. Prior to the delivery of the motor coach to the insured, the company that sold the motor coach performed a full inspection of the vehicle, but did not detect the issue that caused the fire. *Id.* The court ruled that the insurance company's claim was barred under the IPLA, and the insurance company argued that the company that sold the motor coach had actually breached a duty by negligently providing services when it failed to recognize the defect that caused the fire in the pre-delivery inspection of the vehicle. *Id.* at 4-5. The court applied the predominant purpose test, and concluded that the

transaction was primarily for the sale of a product. *Id.* at 5. The court stated: "Even if some small fraction of the purchase price were allocated to the final preparation services, including the final inspection—and the parties never made such an allocation—a jury could not reasonably find that the transaction was 'predominantly' for the sale of a service." *Id.*

In the case at hand, Cintas argues that this relationship was clearly for the provision of a product, and argues that the laundering service was something that customers could but were not required to use. (DE # 199 at 10.) The evidence Cintas cites for this proposition, however, does not indicate that Quik Cut employees could launder their own clothes.[6] In fact, language from the rental agreement indicates the opposite is true: "All garments will be cleaned and maintained by Company." (DE # 105-1 at 3.)

Additionally, Cintas put forth evidence outlining the extensive process that the clothing Quik Cut employees used went through after being returned to Cintas each week. (DE # 115 at 22.) Unlike the service aspects of the transactions in the *Great Northern Ins. Co.* and *Hill* cases, the service aspect of the relationship between Quik Cut

---

[6] Cintas cites testimony from the deposition of Rex Hathaway:

> Q: Did you ever launder those clothes yourself?
> A: No.
> Q: And I presume they didn't want you to; is that right?
> A: I was paying for a service. I didn't think I had to.

(DE # 119-1 at 3.)

and Cintas was not incidental. It made up a substantial portion of the relationship. (*See* DE # 116-15 at 5, 13-20.)

In sum, unlike the transaction in *Great Northern Ins. Co.*, a reasonable jury could find that the relationship in this case was predominantly for the sale of a service. Therefore, Cintas has not met its initial burden and is not entitled to summary judgment on Count I of plaintiffs' complaint.

**VI. Conclusion**

For the foregoing reasons:

1. Defendant Cintas's motion for summary judgment is **GRANTED** as to Counts II and III, and **DENIED** as to Count I. (DE # 105.)[7]

2. Defendant Cintas's motion for oral argument (DE # 120) is **DENIED AS MOOT**.

<center>**SO ORDERED.**</center>

Date: October 11, 2012

<div style="margin-left:40%">
s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT
</div>

---

[7] Cintas also argues that plaintiffs' failed to follow the local rules in their response brief, and requests that its statement of material facts be treated as undisputed. (DE # 119 at 1.) The court need not address that argument, as the only issue that precluded summary judgment, the product/service distinction, was not addressed in Cintas's statement of material facts.